

EXHIBIT

D.

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

SUTTER & GILLHAM, P.L.L.C.; LUTHER
SUTTER, and LUCIEN GILLHAM                                      **PLAINTIFFS**

VS.

No. _____

EMILY RUNYON; MUNSON, ROWLETT, MOORE
AND BOONE, P.A.; ANNIE DEPPER; BLAKE HENDRIX;
FUQUA CAMPBELL, P.A.; DAVID WILSON;
FRIDAY, ELDREDGE & CLARK, LLP; MEL SAYES;
MATTHEW SANDERS & SAYES, P.A.; AND
JOHN DOES 1 – 100                                              **DEFENDANTS**

### DECLARATION OF DAVID D. WILSON

My name is David D. Wilson. I am over the age of 18 years and make this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.      I am a licensed Arkansas lawyer practicing with the law firm Friday Eldredge and Clark, 400 West Capitol Ave., Suite 2000, Little Rock, Arkansas (the "Friday Firm").

2.      I am named as an individual defendant in this case.

3.      On September 23, 2024 the Friday Firm received a certified mail package from Plaintiffs through the United States Postal Service (USPS). A copy of all documents in that package received at the Friday Firm's office, except for the thumb drive referenced in the September 18, 2024 "Letter to Defendants," are attached hereto collectively as Exhibit 1.

4.      Exhibit 1 was delivered to my office by a courier employed by the Friday Firm. I do not know whether anyone at the Friday Firm signed the return receipt "green card."

5.      I did not sign any return receipt green card. No one from USPS presented the package to me or ask that I sign for same.

1

6. Plaintiffs filed a proof of service with the Jefferson County Circuit Clerk on October 1, 2024 regarding their alleged service on me in this case. A copy of that filing is attached hereto as Exhibit 2. Exhibit 2 indicates by checked box stating that Plaintiffs claim to have served me by "first class mail to the defendant together with two copies of notice and acknowledgment and received the attached notice and acknowledgment form within 20 days." This is false. I received no first class mailing from Plaintiffs and have never received a "notice and acknowledgment" form from Plaintiffs.

7. Exhibit 2 includes what appears to be a Google search page referencing a USPS tracking number. The document states that the package corresponding to that tracking number was "delivered and is available at a PO Box at 8:50 am on September 23, 2004 in Little Rock, AR 72202." My name is not printed on the Google Search pages but is handwritten on the first page. I do not know who wrote this. It is not my signature.

Dated this __21__ day of October, 2024.

DAVID D. WILSON

2



Exhibit "1"



# SUTTER & GILLHAM, P.L.L.C.

### ~ ATTORNEYS AT LAW ~

PHYSICAL ADDRESS: 1501 N. PIERCE, STE. 105, LITTLE ROCK, AR 72207
TELEPHONE 501/315-1910 FACSIMILE 501/315-1916

LUTHER ONEAL SUTTER, P.A.
LUTHER.SUTTERLAW@GMAIL.COM

LUCIEN R. GILLHAM, P.A.
LUCIEN.GILLHAM@GMAIL.COM

CALEB BAUMGARDNER
CALEB.SGLAW@GMAIL.COM

## via Certified Mail/Return Receipt/Restricted

September 18, 2024

Letter to Defendants

Emily Runyan, Esq.
Mel Sayes, Esq.
FUQUA CAMPBELL, P.A., via Registered Agent
Blake Hendrix, Esq.
MATTHEWS, SANDERS & SAYES, P.A., via Registered Agent
FRIDAY, ELDREDGE & CLARK, LLP, via Registered Agent
Annie Depper, Esq.
David Wilson, Esq.
MUNSON, ROWLETT MOORE & BOONE, P.A., via Registered Agent

**Re:  Sutter v Runyan, *et al***
**Jefferson County 35cv-24-455**

Dear Sir/ Madam:

Enclosed please find a copy of a Summons, Complaint, John Doe Affidavit, along with a Thumb Drive that contains all of the Exhibits that were to be attached to the Complaint, due to their volume, all of which have been issued and filed in the above captioned case naming you as a Defendant in both your Individual and Official Capacity.

These documents are being sent to you for the purpose of service upon you, pursuant to Rule 4 of the Arkansas Rules of Civil Procedure. You need to read the documents take appropriate action on your behalf. Your failure to so respond to the Summons will result in a Judgment of the Court being entered not withstanding your objection.

Sincerely,

*Luther Sutter*

Luther Oneal Sutter, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

*Lucien R. Gillham*

Lucien R. Gillham, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

LOS/eah

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
CIVIL DIVISION

SUTTER & GILLHAM, P.L.L.C., *et al*                                    PLAINTIFFS

vs                            CASE NO. 35CV-24 _____

EMILY RUNYON, *et al*                                                  DEFENDANTS

## SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

**DAVID WILSON**

A lawsuit has been filed against you.  The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the Plaintiff or Plaintiff's attorney, whose name and address are: **Luther Sutter, Lucien Gillham, or Caleb Baumgardner, of SUTTER & GILLHAM, P.L.L.C., 1501 N. Pierce Ste. 105, Little Rock, AR 72207.**

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**ADDITIONAL NOTICES INCLUDED:** Summons, Complaint, John Doe Affidavit and Notice of Consent if and when issued by the Circuit Court Clerk's Office.

CLERK OF COURT

Address of Clerk's Office
Jefferson County Circuit Clerk
101 W Barraque
Pine Bluff, AR 71603

_____
[Signature of Clerk or Deputy Clerk]

_____
[SEAL]

This summons is for:  **DAVID WILSON**

## PROOF OF SERVICE

□ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

□ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

□ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

□ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

□ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours. I left the summons and complaint with

_____
[name and job description]; or

□ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

□ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

□ Other [specify]:

□ I was unable to execute service because:

My fee is $ _____.



**Case Title:**   SUTTER & GILLHAM, ET AL  V EMILY RUNTON, ET AL

**Case Number:**   35CV-24-455

**Type:**   SUMMONS - FILER PREPARED

So Ordered

*Sonya Hall*

Sonya H. Hall, Jefferson County Deputy Circuit Clerk

Electronically signed by SHHALL on 2024-06-04    page 4 of 4

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
    [signature of server]

_____
    [printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
    [signature of server]

_____
    [printed name]

Address: _____

    Phone: _____

Subscribed and sworn to before me this date: _____

    Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____
_____
_____
_____

ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2024-Jun-03 17:33:46
35CV-24-455
C11WD05 : 31 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
## CIVIL DIVISION

SUTTER & GILLHAM, P.L.L.C.; LUTHER SUTTER, and
LUCIEN GILLHAM                                              **PLAINTIFFS**

VS.                    CASE NO: 35CV-24 - _____

EMILY RUNYON; MUNSON, ROWLETT, MOORE AND BOONE, P.A.; ANNIE
DEPPER; BLAKE HENDRIX; FUQUA CAMPBELL, P.A.; DAVID WILSON;
FRIDAY, ELDREDGE & CLARK, LLP; MEL SAYES; MATTHEWS, SANDERS
& SAYES, P.A.; AND JOHN DOES 1-100
                                                           **DEFENDANTS**

## COMPLAINT

COME THE PLAINTIFFS, by and through Counsel, and for this Complaint each states:

## JURISDICTION

1. Plaintiffs, Luther Sutter ("Sutter"), and Lucien Gillham ("Gillham"), are each a resident and citizen of Pulaski County, Arkansas, who are associated with **SUTTER & GILLHAM, P.L.L.C.**, ("S&G"), an Arkansas Limited Liability company with its principal place of business in Pulaski County, Arkansas.

2. Defendants are all residents of the State of Arkansas, who, at all times relevant hereto were acting under color of law in a conspiracy to deny Plaintiffs the Due Process guaranteed them by the Fifth Amendment, as applied to the states through the Fourteenth Amendment.

3. This is also an action for tortious interference with contract, malicious prosecution, abuse of process, defamation, barratry, champerty, maintenance, conspiracy, and for denial of each Plaintiff's constitutional rights assured them under the United States Constitution and the Arkansas Constitution.

1

4. Each Plaintiff brings this action to redress deprivation of their rights under the First Amendment to the United States Constitution, Fourteenth Amendment to the United States Constitution, and Article II Section 22 of the Arkansas Constitution, as permitted by the Arkansas Civil Rights Act of 1993 (ACRA) and 42 U.S.C. §1983 and 1985.

5. Since the acts giving rise to this action arose within this County, venue is proper.

6. This Court has subject matter jurisdiction over these claim

7. This action is filed within one year of an involuntary dismissal without prejudice on Rooker Feldman grounds by the United States District Court without prejudice, thereby invoking the savings statute.   Therefore, the federal court does not have jurisdiction.

## PARTIES

8. Plaintiffs LUCIEN GILLHAM (Gillham) and LUTHER SUTTER (Sutter) are lawyers licensed to practice law in the State of Arkansas, who are associated with an Arkansas Professional Limited Liability Company, SUTTER & GILLHAM, PLLC (S&G).

9. The Lawyers representing the Adamses acted at all times relevant with the express permission of the ADAMSES and the express or apparent authority granted them by the Adamses.

10. ERIC BELL is a lawyer employed by the Adamses and their associated companies as a lawyer in their Conway office, who conspired with the Adamses and one or more of the Defendants to deny Plaintiffs their constitutional rights by recruiting his friend and fellow Chris Burks to sue the Plaintiffs frivolously.

11. EFREM NEELEY is a lawyer licensed to practice law in the State of Arkansas. Neeley was a former law partner of ALEX GUYNN (Judge Guynn), a sitting Circuit Judge for

2

Jefferson County, Arkansas, who referred David Westbrook, in conjunction with Henry and one or more of the lawyer Defendants, to WH Law to sue the Plaintiffs to smear the Plaintiffs. Judge Guynn was presiding over the lawsuit attached as *Exhibit "A."* The John Doe Defendants are identified in the John Doe Affidavit filed herein and incorporated by reference, as allowed Rule 10(c).

12. NEELEY was hired primarily to be a conduit to Judge Guynn and because he was Judge Guynn's former law partner. NEELY also intentionally mislead David Westbrook into hiring Burks, who then associated WH LAW[1] to file a frivolous counterclaim against the Plaintiffs on 2/4/2020 in Saline County Circuit Court to cause Plaintiffs to withdraw at hearing in the Jefferson County Circuit Court on 2/4/2020.

13. SKYLAR ADAMS, BRYAN ADAMS, AND BRANDON ADAMS are residents of Arkansas who retained the lawyers to destroy Sutter and his family for an improper purpose and who has sued Plaintiffs in the frivolous lawsuit attached as *Exhibit "B."*

14. TOMMY WILLIAMS is a lawyer licensed to practice law in the State of Arkansas, who has stated his intent to destroy Sutter since at least 2019. He is a lawyer associated with Quattlebaum, Grooms, and Tull PLLC (QGT).

15. EMILY RUNYON is a lawyer licensed to practice law in the State of Arkansas associated with Munson, Rowlett, Moore and Boone, P.A., ANNIE DEPPER and BLAKE HENDRIX( each a lawyer Defendant) are associated with FUQUA CAMPBELL, P.A, are lawyers licensed to practice law in the State of Arkansas. DAVID WILSON (a lawyer Defendant) is a lawyer licensed to practice law in Arkansas associated with FRIDAY, ELDREDGE & CLARK,LLP. MEL SAYES and MATTHEWS, SANDERS & SAYES, P.A. are

---

[1] No claims are brought against WH lawyers because that matter has been settled for $175,000.00.

3

also lawyer licensed to practice law in the State of Arkansas who joined in Henry's factually basis Motion.

## GENERAL ALLEGATIONS OF FACT

16. Every lawyer and judge, including Judge Clark and Judge Guynn, knows, and was taught in law school, that is it immoral to participate in an *ex parte* communication between a lawyer and a judge, where that communication includes discussing a pending case when the judge is presiding over the case and the lawyer represents a party in the case.

17. *Ex parte* communications about the merits of the Jefferson County case, hereafter discussed in great detail, between Judge Guynn and Neeley took place on more than one occasion.

18. Other defendants not only were aware the *ex parte* communications were taking place between Judge Guynn and Neeley, they encouraged the communications.

19. Greg Stephens (Stephens) was the lawyer who filed the lawsuit attached as *__Exhibit "A"__* - the Jefferson County case.   Stephens also was the lawyer for the Estate of Luke Baker, pending before Judge David Clark in Faulkner County.

20. After a hearing, Stephens was also sanctioned by Judge David Clark, shortly after Clark met with Bryan Adams at Adams' office.  After that hearing, the Adamses approached Baker's private investigator, Allen Noble, and threatened him.

21. Upon information and belief, a reasonable inference is that Adams and Clark agreed that Clark, sitting as a judge presiding over the Estate of Luke Baker, would sanction Stephens because of their social relationship.

4

22. There was substantial evidence that Luke Baker, whose tortious, and possibly criminal, wrongful death was the subject matter of the Jefferson County case, did not commit suicide. So, Greg Stephens brought an action on behalf the Estate of Luke Baker for wrongful death and other torts, and by his family members, individually for torts directly committed against them after the death of Luke Baker as more particularly set out below.

23. Plaintiffs never represented the Estate.

24. The defendants in the Jefferson County case included Bryan Adams ("Bryan"), Skylar Wilson ("Wilson"), Travis Jones, Carson Cook ("Carson"), Karla Cook ("Ms. Cook"), Todd Ross ("Ross"), Austin Tate ("Young Tate" or "Austin"), John Tate ("the elder Tate"), Mary Tate, and Christie Adams ("Ms. Adams") and they reside in Faulkner County.

25. The Jefferson County case defendant Brandon Adams ("Brandon") owns the real estate which was the location of Luke's wrongful death in Jefferson County, Arkansas. He is also an officer and director of Reliance Health Care, Inc. ("Reliance, Inc."), an Arkansas business.

26. Jefferson County case defendants, Prairie Wings South, LLC ("P.W. South") and Prairie Wings Lodge, LLC ("P.W. Lodge") are Arkansas companies doing business in this state and own or manage the property known as the Prairie Wings Duck Club ("The Club") in Jefferson County where Luke Baker ("Luke") died.

27. Reliance Health Care, Inc. and perhaps a John Doe company, were the employers of Travis Jones at times, as were some of the other defendants, and directed the activities of some of the co-defendants at times relevant hereto.

28. Kerry Baker, surviving father and Administrator, Savannah Baker Case, surviving sister, and Gena Downey Baker, surviving mother, are the immediate familial survivors of Luke,

5

and are all adults. They were each represented by separate counsel in the Jefferson County case.

29.    Plaintiffs herein only represented, for a time, Gena Downey Baker.

30. In the Jefferson County case, the Plaintiffs believed the evidence was sufficient to prove the following:

a. On October 24, 2015, four friends, Wilson, Austin, Carson, and Luke went on a joint venture, a hunting trip, with drugs and alcohol to the Prairie Wings Duck Club near Altheimer, Arkansas in Jefferson County.

b. The joint ventures were invited as guests of their hosts, the owners of the Duck Club, who were Brandon, Bryan, Ross, Whicker, P.W. South LLC, P.W. Lodge LLC, and one or more Doe defendants.

c. These owners of the property control the operations thereon as though the property was solely theirs, despite the fact that base legal title and management of the company rests in the names of P.W. South LLC, managed by P.W. Lodge LLC, which also has a property right therein.

d. Near the end of the evening on October 24, 2015, around 10:30 p.m., give or take a few minutes, there was evidence of an altercation or event, between Wilson and Luke wherein a physical confrontation and struggle ensued, resulting in the death of Luke by gunshot wound to the head.

e. Luke did not commit suicide.

f. Death was instantaneous or within seconds.

g. Whether anyone other than Wilson actually visually witnessed the event is known only to Wilson, Carson, and young Tate.

h. Whether Carson heard the shot, or was in the room also, is known only to him and Wilson.

i. Austin claims the shot woke him but that he thought someone was test firing a blank powder cartridge and so he did not respond until summoned by Carson and Wilson.

j. The evidence of this event was in the exclusive control of these persons and the death could not have ordinarily occurred without tortious, negligent or criminal action since Luke did not commit suicide.

k. Austin admitted Luke was not depressed. All who knew him knew he was not

6

depressed, and Austin has stated Luke was not suicidal that evening or at any other time.

l. False rumors of depression have been circulated by other Jefferson County case defendants.

m. Upon recognizing that Luke was dead, there was no rushed effort to contact authorities, call 911, or get help for Luke.

n. It was over 30 minutes before any such action was taken.

o. Carson insisted upon action by the three surviving friends to protect himself and his family as partners in the duck hunt.

p. Wilson demanded adherence to his version of events that the wound was self-inflicted, which was a lie to prevent an investigation, arrest, or prosecution, for the felonies being committed.

q. Given what Wilson had just done, and the resulting condition of Luke, and the continued presence of a gun, there was no resistance by the young Tate to the demands to cover up any evidence that would implicate any of the defendants, and there was no mood to dissent.

r. At some point between Luke's death and 11:15 p.m., the Jefferson County case Defendants may have removed the murder weapon and replaced it with Luke's gun, which had been in the bedroom hanging on the bed post.

s. This fraudulent behavior is a felony crime and constitutes an overt act by Wilson, Carson, and young Tate, thereby forming a conspiracy by the three at that time. Others joined in the conspiracy later in the evening.

t. The three surviving friends over the next hours contacted directly or indirectly, through intermediaries, and by various available means, Jefferson County case co-defendants, Bryan, Karla Cook ("Ms. Cook"), Christie Adams ("Ms. Adams"), Jones, Mary Tate, John Tate ("the elder Tate"), Brandon, Ross, Whicker, and others.

u. Such contacts began before any action to summon authorities to the scene.

v. The purpose of those contacts was to enlist persons in the conspiracy to cover up the crimes committed before police authorities could investigate, which they did.

w. Whicker, Bryan, Brandon, Ross, P.W. South, P.W. Lodge, and Doe defendants, or at least one of them acting for them all, gave instructions as to what

7

actions should be taken to protect the Jefferson County case co-defendants from liability.

x. Wilson, Austin and Carson followed the instructions they were given.

y. One of the Adams Jefferson County case defendants, in his role as an executive of Reliance, Inc. and on behalf of Reliance, Inc., contacted Travis Jones, an employee of Reliance, Inc., an agent of Bryan personally, supplier of things illegal, and all around "fixer", to speed to the scene and protect the interests of the other defendants, and also himself, by removing evidence, destroying evidence, stealing evidence, absconding with evidence, and helping to mislead authorities, prevent detection of what had actually transpired, and to hide evidence of the drugs that were supplied by him or other defendants, and to dispose of other contraband.

z. The other defendants either knew about the post-death conspiracy, fully agreed with it, or when learning about it, joined in and cooperated with it completely.

aa. Reliance, Inc. is responsible for the acts of Jones, Bryan, Brandon or other agents that were used on behalf of Reliance.

bb. The activities of the Club were for the benefit and entertainment of Reliance and its associates and guests, and the costs thereof constituted a deduction on the tax returns of Reliance, Inc.

cc. The actions taken by the conspirators were, among other things, spoilation, false reporting to authorities, compounding, hindering, aiding, abetting, obstructing, theft, and other criminal offenses, all of which went undetected due to a lack of truth or any renunciations by any of the Jefferson County case co-defendant conspirators, whether real persons or companies.

dd. The crimes committed from the moment Luke was killed through the present date, and the names of the various Jefferson County case defendants who likely participated in the commission of those crimes are as follows:

    i. Manslaughter (reckless homicide) or more (Skylar Wilson);

    ii. False Report (Skylar Wilson) (A.C.A. § 5-54-122(c)(1)(D) for lying to authorities "to conceal his own criminal activity";

    iii. Hindering (Bryan Adams, Carson Cook, young Tate, the elder Tate, Karla Cook, Travis Jones, Mary Tate, and others) (A.C.A. § 5-54-105) in that with purpose to hinder a prosecution of Skylar Wilson for a homicide for felony they hindered by (i) concealing, altering, suppressing facts or things relevant to the investigation, or

8

(ii) supplying false information to law enforcement (§105(a)(6)); or (iii) providing erroneous facts, documents, or instrumentalities (as in a fake gun) to distract or inhibit the true course of the investigation (§105(a)(7));

iv. Compounding (Travis Jones, Reliance, Bryan) (A.C.A. § 5-54-107) by Travis accepting or agreeing to accept a benefit and for the other two providing or agreeing to provide same in return for silence about a crime;

v. Delivery (several defendants including Jones, Reliance, Bryan, Wilson, Carson) (A.C.A. § 5-64-438);

vi. Conspiracy to Commit or Aid any Class C Felony listed herein (all defendants including Christie Adams) for agreeing at least one of them will, commit or aid in a felony or its planning or commission, and commit an overt act (A.C.A. § 5-3-401);

vii. Aiding or being an Accomplice to any of these listed offenses, or any other felony, felony conspiracy (all defendants) (A.C.A. § 5-2-403) by advising, encouraging, failing to prevent, or attempting to aid in the planning or commission thereof;

viii. Illegally moving or handling of a body (A.C.A. § 5-60-101 provides that a person commits a class C felony if he, except as authorized by law, removes a corpse) (Wilson, Austin, Carson, et al).

ee. What is sure is that wholesale sanitizing of the scene, prior to arrival of the team of crime scene investigators occurred.

ff. Contraband was destroyed, removed, stolen, or hidden to avoid detection of the truth.

gg. Lies were told to authorities and others to conceal the truth that this was a homicide.

hh. All Jefferson County case co-defendants were generally aware of the actions of each other, did not object, leave the conspiracy, or cure the damage.

ii. The deputy coroner and sheriff's investigator were intentionally misled, and some degree of "persuasion" took place by one or more of the Jefferson County case defendants to convince others, some perhaps reluctantly, to go along.

jj. The Jefferson County case defendants whose overt acts in furtherance of the

9

conspiracy involved lying to authorities would be Wilson, Carson, young Tate, Bryan, Ms. Cook, and Doe.

kk. When many associates of the Jefferson County case defendants in the 2-3 days after the homicide complained of the incredulity of the Russian Roulette story, the Jefferson County case defendants, to keep the conspiracy going, created an alternate false story that Jefferson County case defendants felt would quiet these objections among associates.

ll. This second false story that was circulated among the Jefferson County case defendants was that Wilson and Luke were at the card table playing a game with Wilson's gun and that Wilson accidentally shot Luke, and that due to fear that no one would believe this, the suicide story was concocted.

mm. This story circulated at parties and among Reliance employees and associates with the explanation that the suicide story was necessary to prevent Wilson from being "ruined" for what was just an accident.

nn. The Jefferson County case defendants whose overt conspiratorial acts involved knowingly lying about the cause of death or helping others to lie includes every Jefferson County case defendant except possibly P.W. Lodge, P.W. South, Ross, Whicker, elder Tate, and Mary Tate.

oo. These six Jefferson County case defendants, except perhaps Ross, committed overt acts toward helping the "clean up", and thereby destroying evidence, in aid of the conspiracy.

pp. Ross became aware of the false stories, and as owner of the premises had an affirmative duty to disclose what he knew.

qq. Luke's body was removed from the scene, over thirty minutes after death, illegally, and by instruction and intention.

rr. None of the conspirators ever notified authorities, even during a sixteen-minute 911 phone call, that Luke was dead.

ss. The body was taken to a hospital 20 miles away to divert the investigators to an emergency room instead of the Club.

tt. The gates to the Club were locked by Wilson, Carson, and young Tate upon instruction by an owner to prevent entry by the authorities.

uu. The failure to send the body to the crime lab for autopsy was outrageously accomplished by the conspirators by lying to the deceased's father Kerry Baker, and pressuring him to refrain from asking for an autopsy, so the decision not to

10

have one could be blamed on him, when the decision was not his to make by law, especially under the devastatingly grave circumstances.

vv. The hospital ER doctor was coerced into signing the death certificate in an attempt by the conspirator Jefferson County case co-defendants to obviate the autopsy requirement of the law that applies to coroner cases.

ww. The chief coroner, the Sheriff, and the ranking Major were not fully informed until the body was cleaned, in the morgue, and after evidence was destroyed.

xx. The Jefferson County case co-defendants divided their labor, some acting at the hospital, some contacting law enforcement, others instructing witnesses, and others cleaning and removing evidence from the scene, the body, the hospital, and elsewhere.

yy. The Jefferson County case defendants know where the actual weapon is and still they remain silent.

zz. Illegal substances and guns were supplied by Jefferson County case defendants Wilson, Carson, Bryan, Reliance, Inc., Travis Jones, and by the owners of the property by their agent(s), Reliance agents other than Jones, and one or more Doe defendants, either directly, as agents, or indirectly by their agent(s).

aaa. The Jefferson County case Defendants' undertook spoliation of evidence, of the homicide itself, of the drinking and drugging attendant thereto, and of all actions taken by them.

bbb. The Jefferson County case defendants conspired and hid evidence because they knew they were guilty.

ccc. The illegal substances and items provided by some of the conspirators did foreseeably result in the intoxication of Wilson, who had a mental condition, and a propensity towards violence, especially when intoxicated, which was known to all Jefferson County case defendants.

ddd. The drugs also impaired Carson and young Tate from protecting Luke from Wilson, who was unable alone to protect himself from the stronger and violent Wilson.

eee. It was determined the gunshot wound was a "distant" wound as that term is used by medical examiners and excludes close up or contact wound scenarios, such as the death by suicide Russian roulette lie told by Wilson to authorities.

fff. Wilson's statements to authorities on October 24, 2015 and later were false,

11

and intentionally so, further implicating the spoliation inference of liability from the disposing of the real weapon.

ggg. Some of the Jefferson County case defendants were, upon information and belief, involved to some degree in the illegal supplying of drugs, alcohol, and other substances or items to those present at the Duck Club on October 24, 2015 and at times prior thereto.

hhh. Those implicated in this include Travis Jones, Wilson, Carson Cook, the club owners, Reliance, Inc. which supplied the finances for the illegal substances and subsidized the activities at the Club, and Doe defendant delivering substances to the lodge, and any Jefferson County case defendant who controlled the premises who supplied, or arranged, or allowed the supply thereof to the hunters.

iii. Law enforcement reports after the event, attributed by the Sheriff's office to information provided by the Jefferson County case defendants themselves, indicated an evening of drugging, drinking, and partying was involved in the resulting death.

31. In a grave miscarriage of justice, Defendants herein unconstitutionally and corruptly procured an order of the Jefferson County Circuit Court, entered on June 22, 2021, sanctioning the Plaintiffs and dismissing the Jefferson County case with prejudice. See Order in docket number 35CV-18-1077, *Exhibit "C"* attached hereto. That case has been appealed and is docket number CV-22-102, currently in the Arkansas Court of Appeals.

## FACTS ESTABLISHING LIABILITY TO PLAINTIFFS

32. In November of 2018, the Jefferson County Coroner decided that Baker's death certificate should be amended, since there was evidence that he clearly had not committed suicide. [2]

33. In December of 2018, Stephens asked Sutter to enter his appearance in the Jefferson County case as conflict counsel for Gina Baker, a statutory beneficiary under the Arkansas

---

[2] Indeed, Sutter eventually developed corroborating evidence that Baker did **not** commit suicide. See Affidavit of Sperry attached as *Exhibit "L."* Defendants slandered, and continued to slander, Plaintiffs with their allegations of misconduct, which caused Plaintiffs to lose business and reputation.

12

wrongful death statute.

34.   Sutter agreed to appear for that limited purpose, so Sutter entered his appearance in December of 2018.

35.   Shortly thereafter, Williams approached Sutter and said that the Adamses would destroy Sutter if he didn't withdraw. Sutter was not intimidated and ignored this threat.

36.   Over time, the threat became real, with the lawyer defendants assisting the Adamses in a campaign to deny Plaintiff his state and federal constitutional rights..

37.   The first indication of the efforts to come to destroy Sutter was Henry's false allegation that Sutter assaulted her.

38.   Henry has a well-earned reputation for abusive litigation tactics, some examples being false allegations against other lawyers like Kevin Keech.

39.   With the approval of Bell and the Adamses, Henry's and Williams' first step was to hire Efrem Neeley (Neeley), a lawyer who conveniently was formerly a law partner with Judge Guynn.

40.   Judge Guynn did not hear Neeley's cases because of this relationship.

41.   Neeley was hired for the specific purpose of influencing Judge Guynn and because he was black.

42.   Although Judge Guynn had recused on every other case in which Neeley appeared, Neeley appeared as counsel of record in the Jefferson County case nonetheless.

43.   Neeley has no significant experience prosecuting complex civil cases such as the case in *Exhibit "A."*

44.   Plaintiffs trusted Judge Guynn to be impartial, so Sutter recommended to his client

13

that any conflict caused by Neeley's entry into the case be waived. That was a mistake.

45. Neeley's appearance in the case was another substantial step in a conspiracy to deny Plaintiffs, the Nobles, and Stephens their constitutional rights.

46. Neeley was hired simply to provide a conduit of information between himself and Judge Guynn and because Neeley was black.

47. Neeley and Guynn met after hours at Neeley's law office during the pendency of the Jefferson County litigation.

48. Neeley was paid tens of thousands of dollars by the Adamses.

49. Neeley was hired on the recommendation of WLJ.

50. During the course of the Baker case, Neeley and Judge Guynn communicated about the case *ex parte*.

51. The Adamses also communicated directly with sitting, and long-time friend, Circuit Judge David Clark in Faulkner County, Arkansas.  Clark visited with the Adamses regularly, but he failed to disclose this fact to the parties to the Probate.

52. The Adamses and Bell knew what the respective judges would do on several occasions before the Plaintiffs and their client, Gina Baker.

53. On occasion, Judge Guynn discussed the case with Neeley at Neeley's office after hours, and Neeley then would contact Eric Bell or the Adamses and report what the Judge's decisions would be.

54. The lawyer defendants would then craft their representation of the Adamses based upon the "inside" information they had but that Plaintiffs and their clients did not.

55. Bell, Henry, Neeley, and Williams then recruited other lawyers like Chris Burks,

14

who then associated BRANDON HAUBERT, to make spurious allegations against the Plaintiffs, thereby committing barratry, champerty, and maintenance.

56. Henry then used the Westbook counterclaim that falsely alleged that Plaintiffs had "sold out" a client, David Westbrook, to bribe the Jefferson County Coroner to change the manner of death in the Luke Baker death certificate to create a conflict for the Plaintiffs. Her false representations to the Court are attached as *Exhibit "M."*

57. Henry intentionally failed to disclose to the Court that Defendants had encouraged, aided, and abetted the filing of the false Westbrook counterclaim. Thus, the Westbrook allegation were an intentional attempt to create a conflict for the Plaintiffs, after one or more Defendants discovered the Westbrook case had been settled.

58. Henry failed to disclose that Efrem Neely, acting with the approval of Henry and Williams, approached David Westbrook, after he settled his case, and falsely suggested to Westbrook that Plaintiffs had sold him out.

59. Henry failed to disclose that Efrem Neely, acting with the approval of Henry and Williams, arranged a meeting with Williams or the WLJ lawyers at the offices of WLJ.

60. Henry failed to disclose that at that meeting, Efrem Neely, acting with the approval of Henry and Williams, then convinced Westbrook to contact Chris Burks, whom had been recruited by Bell at the requests of the other Defendants, for the purpose of filing a frivolous suit against the Plaintiffs for free.

61. Then, Henry and Williams convinced the Defendants, other than Sayes, to sign pleadings that accused Plaintiffs of heinous activities to fabricate a basis for the Faulkner County litigation. See *Exhibit "D,"* for example. The Sayes Defendants did not serve *Exhibit "N"* on

15

the Plaintiffs. Although these other lawyers declined to sign the frivolous Faulkner County Complaint, they did sign the Motion attached as *Exhibit "D."* The Motion was not served on the Plaintiffs, even though Plaintiffs had a clearly established right to Due Process. Defendants violated Plaintiffs' right to Due Process. One egregious example is Irby, a lawyer employed by WLJ and a former law clerk to a federal judge and clearly was well versed in Due Process rights.

62.   A hearing was held on June 2, 2021, at which none of the Plaintiffs were present, but one or more of Defendants were present. See Transcript attached hereto as *Exhibit "E."* The transcript reveals that, acting at the Defendants' insistence, Judge Guynn entered an Order under Ark. R. Civ. P. 11 and 37 sanctioning the Plaintiffs without ever having given Plaintiffs notice.

63.   The Bakers' lawyers, Eric Buchanan and Marion Humphrey, did not introduce a single piece of evidence at the hearing. As a result, these attorneys were not sued by the ADAMSES, even though they approved and executed the joint decisions made by all counsel in the Baker litigation.

64.   Henry drafted the order, but her draft sets forth reasoning for the decision which differs in important ways from what Judge Guynn actually ruled from the bench.  Judge Guynn signed the order anyway.

65.   As soon as Sutter found out about Judge Guynn's sanctions order, he filed a Motion to Intervene, attached as *Exhibit "F."* The lawyer Defendants(with the exception of Sayes) then filed a Response, attached as *Exhibit "G."* Sutter then filed a Reply, attached as *Exhibit "H."* MATTHEWS, SANDERS & SAYES, P.A. did not respond and took no action to address its failure to give Plaintiffs' notice of the hearing, even though it had specific knowledge of the scheme outlined herein.

16

66. Any reasonable and honest judge, as well as all the lawyers involved, would give lawyers like the Plaintiffs notice and a meaningful opportunity to be heard, but not a single lawyer representing the Bakers objected to the absence of Sutter and Gillham. Why? Because all Defendants achieved their goal - INTIMIDATION! All of these actions were intended to deny Plaintiffs' Due Process and their First Amendment rights to access to courts. All Defendants abused the judicial process and interfered with Plaintiffs' contract rights. The result would have been different had Burks and BRANDON HAUBERT not filed the frivolous lawsuit, and such filing was a substantial step in the conspiracy.

67. Upon information and belief, in furtherance of the illegal conspiracy between all Defendants, acting under the influence of Neely and to further Neely's financial interests, Judge Guynn then denied Sutter's Motion to intervene at the Adamses', lawyer Defendants' request, just as he had denied the Bakers' absolute right to nonsuit the case under Ark. R. Civ. P. 41 multiple times. The Order sanctioning the Plaintiffs sets forth no reason for the decision and was drafted by Henry. The Order denying Intervention was a further denial of Plaintiff's Due Process rights and was procured by all lawyer Defendants by virtue of a frivolous motion filed on June 2, 2021.

68. Using the void Order, Williams, Ed Lowther, Fair, Henry, Irby and the Adamses then caused to be filed **_Exhibit "B."_** Exhibit B is sometimes referred to as the Faulkner County case and a frivolous complaint with the Arkansas Committee on Professional Conduct. Indeed, in response to a Motion to Disqualify him in the Faulkner County litigation, Neeley stated, "By virtue of Rule 11, plaintiffs' attorneys have already affirmed that they believe the allegations of the first amended complaint to be true. If required to testify, plaintiffs' attorneys would support

17

those allegations and plaintiffs' claims." But Neeley will also testify, "You should tell Mr. Sutter that I have nothing bad to say about him. I think he's a great attorney, I just think this was a bad situation he was in." How can this be?

69. Defendants will argue in the Faulkner County case that Plaintiffs should be collaterally estopped from relitigating most issues, even though Plaintiffs have never had the opportunity to present uncontroverted evidence that they did not engage in improper conduct. Indeed, the issue of whether Plaintiffs breached their duty to David Westbrook has already been litigated. See *Exhibit "I."* Plaintiffs were obviously successful because Burks, in association with BRANDON HAUBERT, filed the lawsuit at the request of his friend Eric Bell for free at the request of the Adams, with the advice and consent of Williams and Henry, without a factual basis so that Plaintiffs could not defend themselves in the Jefferson County proceedings.

70. Bell, acting through Neeley, had referred David Westbrook to Chris Burks, who, along with BRANDON HAUBERT, then sued Plaintiffs for malpractice and breach of fiduciary duty without a factual basis for free, even though there was no reasonable basis in fact or law for the lawsuit.

71. The WLJ Defendants then caused the allegations of that lawsuit to be publicized throughout the State, through Arkansas Business and others.

72. Arkansas Business is a publication that has an established business relationship with WLJ. Plaintiffs have none.

73. Upon information and belief, Henry, and perhaps others, influenced Arkansas Business to run a slanted story in an attempt to destroy each Plaintiff's reputations.

74. Then, Ed Lowther, Williams, Fair, Henry, and Irby filed the frivolous Faulkner

18

County lawsuit attached, going so far as defaming Sutter's son, Jacob, accusing him of conspiring to suborn perjury.

75. Jacob had only flown a jet to pick up independent counsel to assure ethical and proper conduct in the Baker case. Jacob also ran a slide show during the taking of the Coroner's deposition in the Baker case.

76. To further add insult, Henry sent a FOIA request to Jacob's law school, which the law school allegedly lost. Upon information and belief, Henry and other Defendants obtained information about Jacob protected by FERPA.

77. Jacob Sutter has been forced to disclose the lawsuit against his father, *Exhibit "B,"* to the Arkansas Supreme Court and its committee, which could, but hopefully won't, delay his licensure.

78. The reference to Jacob in *Exhibit "B"* was gratuitous and outrageous, and designed to anger Sutter.

79. Despite warnings, WLJ and its lawyers continue to falsely accuse Sutter of unethical conduct in order to force him to withdraw. *Cheatwood v. Horan* is an example. In that case, Michele Browning falsely accused Sutter of unethical conduct. This allegation then forced Sutter to withdraw, and then a defense verdict was rendered. As a result of each Defendant's actions, Plaintiffs have lost millions of dollars in fees, as well as incurred attorney's fees and costs.

## COUNT I-RETALIATION

80. Each Plaintiff realleges the foregoing as if fully set out herein.

81. Each Plaintiff had a clearly established right to freedom of speech and access to courts under the 1st Amendment and to remonstrate under the Arkansas Constitution, as well as

19

to participate in an investigation designed to determine whether a homicide occurred.

82. The issue of whether Luke Baker committed suicide or was murdered is an issue of public concern, as well as whether there was public corruption in Jefferson County. If Luke Baker was murdered, covering that up involved both state action and some of the defendants participating in and inducing that state action.

83. Defendants deprived each Plaintiff of their constitutional rights without Due Process by obtaining an Order designed to smear the Plaintiffs.

84. The actions undertaken by the Defendants would chill a reasonable person of ordinary firmness.

85. By virtue of the facts alleged herein, each Plaintiff has lost wages, lost fringe benefits, lost fees, and incurred other damages in an amount to be proven at trial.

86. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages in their respective individual capacities.

## COUNT II-CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS

87. Plaintiffs reallege the foregoing in support of their claims under the ACRA and 42 USC §1983 and 1985 as if fully set out herein.

88. Plaintiffs were hired under a contingency fee contract in the Baker case, and Plaintiffs were assigned the right to collect attorney's fees. Plaintiffs had a property right in this contract.

89. In the absence of the conspiracy, Plaintiffs would have prevailed for their client, as would have the Estate of Luke Baker.

90. Upon their entry of appearance, Plaintiffs acquired a statutory lien under Arkansas

20

law.   Judge Guynn's order deprived Plaintiffs of that lien.

91.   "[I]n any §1983 action the initial inquiry must focus on whether the two essential elements to a §1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities, secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

92.   Plaintiffs had a liberty and property interest in their reputation and law license which Defendants intentionally damaged without Due Process.

93.   Defendants all acted under color of law.

94.   To act "under color of" state law for §1983 purpose does not require that the defendant be an officer of the State. It is enough that Defendants were willful participants in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.

95.   The Order attached as *Exhibit "J"* executed and entered by Judge Guynn was the product of a corrupt conspiracy involving the illegal influence of Judge Guynn, as well as another Judge in Faulkner County.

96.   The lawyer Defendants approved and submitted an Order to Judge Guynn they knew was void for lack of Due Process and was false, even though the issues had been determined by the Circuit Court of Saline County.

97.   Judge Guynn denied Sutter's Motion to Intervene because he was corruptly influenced by Neely. There is substantial evidence Luke Baker did not commit suicide, but the

21

Judge had been influenced by Neeley (who was doing so at the behest of the other lawyer defendants) to render an unjust decision at the behest of the Adamses and Bell.

98.    Here, the private parties conspiring with the judge were acting under color of state law.

99.    Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27-29, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

100.    An attorney who participates in corrupt proceedings by continuing to practice in front of a judge who is known to have preordained an outcome in the attorney's favor serves only to compound the corruption. *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999).

101.    For purposes of determining the liability of private parties, it does not matter whether the state official is motivated by avarice or favoritism. Given Judge Guynn's failure to disclose his wife's employment in the Lee Davis case described as *Exhibit "K,"* Plaintiff alleges avarice.

102.    Each Defendant was a willful participant in the corrupt conspiracy which resulted in the order Judge Guynn gladly signed and entered to bring the conspiracy to a final success.

103.    All defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding," and provided facts which would establish a "meeting of the minds." *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981).

104.    The Due Process Clause of the Fourteenth Amendment "requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are

22

designated as 'the law of the land.' " *Buchalter v. New York*, 319 U.S. 427, 429, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943) (quoting *Herbert v. Louisiana*, 272 U.S. 312, 316-17, 47 S.Ct. 103, 71 l.Ed. 270 (1926)).

105.   Judge Guynn's Order was not consistent with the law of the land.

106.   In his argument before the Supreme Court in the Dartmouth College Case, Daniel Webster gave what is perhaps the most often quoted definition of the phrase "law of the land." *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 4 Wheat. 518 (1819). "By the law of the land, is most clearly intended, the general law; a law, which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial." *Id.* In this case, many hearings were meaningless and the resulting judgments predetermined.

107.   An attorney who participates in corrupt proceedings by continuing to practice in front of a judge who is known to have preordained an outcome in the attorney's favor serves only to compound the corruption.

108.   Each of the ADAMSES' attorneys knew that Neeley had specifically being hired to provide a conduit between Judge Guynn and the Defendants, since he had no significant experience in complex litigation. Indeed, the Adamses and Bell, with Williams' and Henry's approval, specifically hired Neeley to provide the conduit between Judge Guynn and the Defendants.

109.   Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he or she is deprived of property by state action. *State of Wash. v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999).

110.   The United States Supreme Court has recognized that "the requirements of

23

procedural due process must be met before a State can exclude a person from practicing law." *Wilner v. Comm. on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

111.   Attorneys are licensed by the state to practice their profession. One who practices his profession has a property interest in that pursuit which may not be taken from him or her at the whim of the government without due process. *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816 (1987).

112.   The practice of law is a privilege and not a right, but one cannot summarily restrict a lawyer's ability to exercise the privilege. *Donovan v. Sup. Ct. Comm. on Prof'l Conduct*, 375 Ark. 350, 290 S.W.3d 599 (2009).

113.   Here, Judge Guynn's order was procured by a corrupt conspiracy, and without Due Process and it stigmatized Plaintiffs in Jefferson County, causing them to lose business, fees, and costs.

114.   One example is Lee Davis. Dr. Davis fired the Plaintiffs because of Judge Guynn's Order. See *Exhibit "K."*

115.   Upon information and belief, WLJ, and one or more of its lawyers, filed a frivolous Complaint against the Plaintiffs with the Committee on Professional Conduct, using the Order at issue as a basis. As a result, Plaintiffs have been unable to apply to practice their profession in other States.

116.   In this case, each lawyer approving the corrupt Order knew that there was no factual basis for the Order and intended that the Order be the basis to collaterally estop the Plaintiffs from litigating the matter in Faulkner County and to provide a basis for the Committee

24

on Professional Conduct to file a cat's paw Complaint against the Plaintiffs. The Adamses and Bell then caused Westbrook to retain Chris Burks, a local lawyer, to file a frivolous counterclaim in the Saline County litigation, which was ultimately dismissed with prejudice.   Burks ultimately executed the Affidavit attached as ***Exhibit "O"***.

117.   By virtue of the facts alleged herein, each Plaintiff has lost wages, lost fringe benefits, lost fees, incurred attorneys' fees, incurred litigation costs, and incurred other damages in an amount to be proven at trial. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT III-DEFAMATION

118.   Plaintiff S&G and Lucien Gillham realleges against all Defendants the foregoing as if it were fully set out herein.

119.   Each Defendant abused the process by procuring the Order without granting Plaintiffs Due Process.   Each action was done to defame Plaintiffs and deny them a jury trial in conspiracy with the other Defendants.

120.   One or more Defendants made defamatory statements outside the pleadings in order to destroy S&G.

121.   S&G and Gillham each has lost reputation and lost business as a result of Defendants' defamatory statements.

122.   Plaintiffs S&G and Gillham sue for defamation resulting from Defendants knowingly making false statements about their character and ethics.

123.   By virtue of the facts alleged herein, S&G and Gillham each has lost wages, lost fringe benefits, lost fees, incurred fees and costs, incurred attorney's fees, incurred litigation

25

costs, and incurred other damages in an amount to be proven at trial.

124. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT IV-INTERFERENCE WITH CONTRACTS

125. Each Plaintiff realleges the foregoing against Williams, Henry, WLJ, and the Adamses, as if it were fully set out herein.

126. Defendants Henry and Williams, acting within the scope of the authority granted them by the Adamses and WLJ, embarked on a calculated course of action designed to destroy the Plaintiffs and interfere with their contracts and business expectancies.

127. One example is Lee Davis. Dr. Davis fired the Plaintiffs without cause because of the Order filed in this matter and the defamatory statements outside the pleadings. There are many others.

128. By virtue of the facts alleged herein, Plaintiffs have lost wages, lost fringe benefits, incurred attorney's fees, incurred litigation costs, lost fees and profits, and incurred other damages in an amount to be proven at trial.

129. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT V-ABUSE OF PROCESS/MALICIOUS PROSECUTION

130. Even though the ADAMSES actions, on their face, appear to be in proper form, the procedures they used to accomplish an ulterior purpose for which those procedures were not designed - the procurement of an order which is false and in violation of Due Process. As a part of this abuse, Burks was then encouraged and requested, by one or more of his co-Defendants, to

26

file a frivolous counterclaim in Saline County against the Plaintiffs on 2/4/2020 without probable cause. The counterclaim Burks and BRANDON HAUBERT filed was dismissed with prejudice, but the abuse of process occurred through the issuance of sanctions Order.

131. The judicial process was turned upside down by Defendants with BRANDON HAUBERT and Burks' filing of the Saline County Counterclaim in 2020 and Guynn's corrupt order in 2022. Instead of using the process for that which it was designed - seeking truth - the judicial process was used to suppress the truth and to insure the wealthy and powerful are above the law.

132. Acting in conspiracy with another, the judicial process was used by Defendants to both coerce and extort the Plaintiffs as shown by the facts pleaded above.

133. Defendants abused process for the express purpose of damaging Plaintiffs concerning reputation in their profession and personally.

134. By virtue of the facts alleged herein, Plaintiffs have lost wages, lost fringe benefits, lost fees and profits, incurred attorney's fees, incurred litigation costs and incurred other damages in an amount to be proven at trial.

135. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT VI-CIVIL CONSPIRACY/BARRATRY

136. Plaintiffs bring this count against all Defendants because the facts set forth I paragraphs 18-81 show that two or more of the Defendants entered agreements which included the following purposes: (1) obtain a result in the Baker litigation which protected any of the defendants from monetary or reputation damages; (2) obtain a result falsely determining Luke

27

Baker committed suicide; (3) engage in barratry, champerty, and maintenance, and (4) destroy Sutter and anyone associated with him by filing frivolous pleadings maliciously. The counterclaim was dismissed on summary judgment, and Plaintiffs ultimately received summary judgment against Westbrook for malicious prosecution and defamation. Defendants should be collaterally estopped from denying the facts established therein.

137.   At various times between August of 2019, the Adamses, Williams, Henry, WLJ, Bell, Neeley, BRANDON HAUBERT, and Burks advised, procured, encouraged and stirred up David Westbrook who was at such time, and who remains, a pauper and in indigent circumstances, to commence and prosecute an action for legal malpractice and breach of fiduciary of duty as described in *Exhibit "I"* against Plaintiffs.

138.   In so doing, the Adamses, Williams, Henry, WLJ, Bell, Neeley, and Burk maliciously intended to injure, harass, and damage Plaintiffs, and to put Plaintiffs to great vexation and expense, unlawfully, maliciously, and without reasonable or probable cause, and without having any interest in the suit against Plaintiffs.

139.   By and through defendant's above-mentioned advice, procurement, instigation, encouragement, and stirring up of Westbrook, Westbrook commenced and prosecuted the action described in *Exhibit "I"* against Plaintiffs, without reasonable or probable cause.

140.   Plaintiffs appeared in the above-mentioned action, denied the allegations of the complaint and any liability as alleged in the complaint, and employed an attorney, Richard Glassman whose office is located in Memphis Tennessee to defend the action.

141.   As described in *Exhibit "I,"* proceedings were had in the action and a judgment was duly made and entered granting summary judgment against Westbrook and is now final. A

28

copy of the judgment is attached to this complaint, marked *"Exhibit I"* and incorporated by reference.

142.   By reason of defendant's acts, advice, procurement, instigation, and stirring up of Westbrook to prosecute the above-mentioned action against plaintiff without probable cause, plaintiff was put to great trouble, vexation, and expense in the defense of the action and was obliged to pay thousands of dollars for the defense and cost of the action.

143.   By reason of the poverty and indigence of Westbrook, each plaintiff was and is unable to obtain satisfaction from for the costs of suit so adjudged against such party and such costs remain wholly unpaid and unsatisfied.

144.   Two or more of the defendants used their agreements to undertake actions which to the casual observer would appear lawful on their face, but those actions were actually oppressive and grossly immoral.

145.   The actions of two or more of the defendants used their agreements to undertake actions were in, in actuality, unlawful, oppressive and immoral.   Eventually, in February of 2020, Burks and BRANDON HAUBERT filed a frivolous lawsuit against Sutter so that Judy Henry could make these allegations in the Jefferson County Circuit Court and in the Faulkner County Circuit Court.   So, Sutter was forced to withdraw from Jefferson County case.

146.   The actions of the Defendants, acting in concert to achieve the result they sought, which was a suppression of justice and the truth about the Luke Baker murder, was a civil conspiracy which purposely injured Plaintiffs, and others.

147.   By virtue of the facts alleged herein, Plaintiffs have lost wages, lost fringe benefits, lost fees and profits, incurred attorney's fees, incurred litigation costs and incurred other

29

damages in an amount to be proven at trial.

148. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT VII-CIVIL FELONY TORT

149. Plaintiffs bring this count against all Defendants because the facts set forth in paragraphs 18-81 show that two or more of the Defendants entered into agreements to bribe or illegally influence a state judicial officer, so a claim is brought under ACA 16-118-107.

150. Defendants aided or abetted a felony, the bribery or illegal influence of a state judicial officer. The actions of the Defendants, acting in concert to achieve the result they sought, which was a suppression of justice and the truth about the Luke Baker murder, was a civil conspiracy which purposely injured Plaintiffs, and others.

151. By virtue of the facts alleged herein, Plaintiffs have lost wages, lost fringe benefits, lost fees and profits, incurred attorney's fees, incurred litigation costs and incurred other damages in an amount to be proven at trial.

152. Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## DEMAND FOR TRIAL BY JURY

153. Plaintiffs demand trial by jury on all issues so triable.

WHEREFORE, Plaintiffs, each pray for appropriate compensatory damages, nominal damages, and punitive damages against each of the named Defendants in the maximum constitutional amount, for a trial by jury, for a Declaratory Judgment that each of the Defendants, individually and as a group or groups, engaged in a corrupt conspiracy in an attempt to suppress

30

the truth that Luke Baker did not kill himself and to prevent Plaintiffs from exercising their state and federal constitutional rights, for reasonable attorneys' fees, for costs and for all other proper relief.

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
1501 N. Pierce, Ste. 105
Little Rock, AR 72207
501-315-1910 Office
501-315-1916 Facsimile
*Attorneys for the Plaintiff*

By:    /s/ Luther Oneal Sutter
Luther Oneal Sutter, Ark. Bar No. 95031
Luthersutter.law@gmail.com

By:    */s/ Lucien R. Gillham*
Lucien R. Gillham, Esq. ARBN 99-199
lucien.gillham@gmail.com

31

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH A | |
| Images | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH B | |
| Images | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH C | |
| Images | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH D | |
| Images | EXHIBITS | |

| 06/03/2024 05:33 PM | DEPOSITION | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH E | |
| Images | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| Entry: | EXH F | |
| Images | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH G | |
| **Images** | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH H | |
| **Images** | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH I | |
| **Images** | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH J | |
| **Images** | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH K | |
| **Images** | EXHIBITS | |

| 06/03/2024<br>05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
|---|---|---|
| **Entry:** | EXH L | |
| **Images** | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
| --- | --- | --- |
| **Entry:** | EXH M | |
| **Images** | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
| --- | --- | --- |
| **Entry:** | EXH N | |
| **Images** | EXHIBITS | |

| 06/03/2024 05:33 PM | EXHIBITS | SUTTER II , LUTHER ONEAL |
| --- | --- | --- |
| **Entry:** | EXH O | |
| **Images** | EXHIBITS | |

ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2024-Jun-04  09:22:27
35CV-24-455
C11WD05 : 2 Pages

IN THE CIRCUIT COURT OF JEFFERSON COUNTY

SUTTER & GILLHAM, P.L.L.C.; LUTHER SUTTER, and          **PLAINTIFFS**
LUCIEN GILLHAM

VS.          CASE NO: 35CV-24 - 455

EMILY RUNYON; MUNSON, ROWLETT, MOORE AND BOONE, P.A.; ANNIE
DEPPER; BLAKE HENDRIX; FUQUA CAMPBELL, P.A.; DAVID WILSON;
FRIDAY, ELDREDGE & CLARK, LLP; MEL SAYES; MATTHEWS, SANDERS
& SAYES, P.A.; AND JOHN DOES 1-100
          **DEFENDANTS**

## JOHN DOE AFFIDAVIT OF PLAINTIFF'S COUNSEL

Comes now, counsel for the Plaintiffs, **SUTTER & GILLHAM, P.L.L.C.**,

and, for this Affidavit, being competent to testify, states that the statements below

are true and accurate:

1.    I am a licensed attorney in good standing in the State of Arkansas and

am the Partner and owner of **SUTTER & GILLHAM, P.L.L.C.**, who are the

attorneys of record for the Plaintiff, in the attached Complaint.

2.    Plaintiff has made reasonable effort to obtain the identity of John

Does 1-100, &/or individuals who are likely to be additional Defendants in the

above-captioned case.

3.    The identities of all individuals and entities are presently unknown.

Plaintiff hereby designates John Doe 1-100 for the purpose of tolling the statute of

limitations pursuant to ACA § 16-56-125.

1

4.    John Does 1-100 are currently unknown persons who is believed to be a person of interest, presently unknown to the Plaintiff.

5.    The pseudo-name will continue to be named &/or submitted with the actual name upon further discovery, if applicable.

**FURTHER AFFIANT SAITH NAUGHT.**

**VERFICIATION**

I, Luther Oneal Sutter,  do hereby certify and state, under oath, that the above facts contained herein are true and correct to the best of my knowledge and belief.

By:  /s/ Luther Oneal Sutter

Luther Oneal Sutter, Esq.
*Counsel for Plaintiffs*

**ACKNOWLEDGMENT**

State of Arkansas        )
                                      ) SS.
County of Pulaski        )

Subscribed and sworn before me, a Notary Public, this 4th day of May, 2024.

ELIZABETH ANN HODGES
Notary Public-Arkansas
Lonoke County
My Commission Expires 09-14-2031
Commission # 12716016

Notary Public

My commission Expires:
9/14/31

2

ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2024-Oct-01 15:14:24
35CV-24-455
C11WD05 : 5 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
### CIVIL DIVISION

**SUTTER & GILLHAM, P.L.L.C.,** *et al*                                                              **PLAINTIFFS**

**vs**                                    **CASE NO. 35CV-24** _____

**EMILY RUNYON,** *et al*                                                              **DEFENDANTS**

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

**DAVID WILSON**

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the Plaintiff or Plaintiff's attorney, whose name and address are: Luther Sutter, Lucien Gillham, or Caleb Baumgardner, of SUTTER & GILLHAM, P.L.L.C., 1501 N. Pierce Ste. 105, Little Rock, AR 72207.

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**ADDITIONAL NOTICES INCLUDED:** Summons, Complaint, John Doe Affidavit and Notice of Consent if and when issued by the Circuit Court Clerk's Office.

CLERK OF COURT

Address of Clerk's Office
Jefferson County Circuit Clerk
101 W Barraque                                    _____
Pine Bluff, AR 71603                              [Signature of Clerk or Deputy Clerk]

                                                  _____
                                                  [SEAL]

This summons is for: **DAVID WILSON**

Exhibit "2"

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____
[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☑ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.



**Case Title:**       SUTTER & GILLHAM, ET AL  V EMILY RUNTON, ET AL

**Case Number:**    35CV-24-455

**Type:**              SUMMONS - FILER PREPARED

So Ordered

*Sonya Hall*

Sonya H. Hall, Jefferson County Deputy Circuit Clerk

Electronically signed by SHHALL on 2024-06-04     page 4 of 4

9/24/24, 10:32 AM                                          usps tracking number - Google Search

Google    usps tracking number           ✕  🎤  📷  🔍              *David Wilson*

All    Images    Videos    News    Forums    Shopping    Web    ⋮ More              Tools

Track your package                                                    ⋮
Data provided by USPS

Tracking number 95890710527017652777789

**Delivered** ⊘
September 23, 08:50AM
Little Rock, AR

🌐    View details on USPS

📞    Call 1-800-275-8777

🚚    Track another package

📦    USPS
      https://tools.usps.com  ⋮

## USPS.com® - USPS Tracking®

Your **tracking number** can be found in the following places: · The shipping confirmation email
you received from an online retailer · The bottom peel-off portion of ...

### Where is my package?
Knowledge. USPS Tracking ®Featured Tracking. Related ...

### USPS Tracking ® Results
Track the delivery status of packages without entering a ...

https://www.google.com/search?q=usps+tracking+number&newwindow=1&sca_esv=e8667bb0a93bb0d1&sca_upv=1&rlz=1C1GCEU_enUS822US822&sxsrf=ADLYWIJ3hzEy051TkI-jQtIIoZcIEB75ww%...    1/4

USPS.com® - USPS Tracking® Results

**ALERT: TROPICAL CYCLONE HELENE, FLOODING, AND SEVERE WEATHER IN THE SOUTHEASTERN U.S. MAY IMPACT DELIVERY. READ MORE › (HTTPS://ABOUT.USPS.COM/NEWSROOM/SERVICE-ALERTS/)**

# USPS Tracking®

FAQs >

**Track Packages Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?

app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

Feedback

Remove ✕

**Tracking Number:**

## 9589071052701765277789

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

**Latest Update**

Your item has been delivered and is available at a PO Box at 8:50 am on September 23, 2024 in LITTLE ROCK, AR 72202.

**Delivered**
**Delivered, PO Box**

LITTLE ROCK, AR 72202
September 23, 2024, 8:50 am

**See All Tracking History**

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**